**James DOWEY, as an individual and as father of Nicholas Dowey (deceased); Ann Dowey, as an individual and as mother of Nicholas Dowey (deceased); Sean Dowey, as an individual and as brother of Nicholas Dowey (deceased); Colin Dowey, as an individual and as brother of Nicholas Dowey (deceased); Nicholas Dowey (Estate of), Plaintiffs—Appellants,**

---

v.

COUNTY OF VENTURA, a political entity; James E. Barrett, as an individual and as an employee of the Ventura County Sheriff's Department; 10 Unknown Ventura County Sheriff Deputies; Pat Hardy, fka 10 Unknown Ventura County Sheriffs; Gil White, fka 10 Unknown Ventura County Sheriffs, Oscar Gongora, fka 10 Unknown Ventura County Sheriffs; Landis Potter, fka 10 Unknown Ventura County Sheriffs; Nat Arnold, fka 10 Unknown Ventura County Sheriffs; Ed Zaragoza, Darin Yanover; Don Rodarte, fka 10 Unknown Ventura County Sheriffs, Defendants—Appellees.

No. 00–55105.

D.C. No. CV–97–07688–MRP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2001.

Decided Oct. 15, 2001.

Before BRUNETTI, RYMER, and WARDLAW, Circuit Judges.

## MEMORANDUM *

James and Ann Dowey, the parents of Nicholas Dowey, appeal from the adverse judgment in their § 1983 action against the County of Ventura Sheriff's Department and individual deputies for using excessive force and withholding medical treatment. They argue that numerous errors warrant judgment in their favor or a new trial. We have carefully reviewed the record of pre-trial and trial proceedings, and see no basis for reversal. Accordingly, we affirm.

1. Given the jury's verdict (which we uphold) that no violation of Nicholas's constitutional rights occurred, there is no need to address whether the County of Ventura had a training policy that was deliberately indifferent to Dowey's rights. *Scott v. Henrich,* 39 F.3d 912, 916 (9th Cir.1994).

2. For the same reason, we do not consider whether the County ratified the conduct of the individual officers.

3. Even if the district court should have held a *Batson*[1] hearing with respect to the dismissal of prospective juror Farrell before the jury was sworn instead of after, any error is harmless. Nothing in the record suggests that the strike was motivated by race. *See Cooperwood v. Cambra,* 245 F.3d 1042, 1045 (9th Cir.2001).

4. The district court accepted the deputies' explanation for striking prospective juror Gilliam. It was a race-neutral reason, and the reason is not so implausible or

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

fantastic as to be pretextual as a matter of law. *See McClain v. Prunty,* 217 F.3d 1209, 1221 (9th Cir.2000).

5. The district court had discretion to permit a previously undisclosed witness to testify; the Doweys were not prejudiced. The testimony was relevant to explain the circumstances of the force used on Nicholas, the reactions of the crowd, and Nicholas's behavior. It was not impermissibly cumulative because this witness was differently situated from others. Nor did the court err by closing the courtroom. *See United States v. Sherlock,* 962 F.2d 1349, 1356–57 (9th Cir.1989). The Doweys agreed there was danger to the witness and that the testimony could be taken as it was.

6. Although admission of the dispatch tape recording is listed as an issue, no argument is developed with respect to it and we therefore deem the point abandoned. *See Martinez–Serrano v. INS,* 94 F.3d 1256, 1259–60 (9th Cir.1996). In any event, the Doweys were able to argue their alteration theory to the jury.

7. Rodarte's flashlight, as well as the serology report about the flashlight and other objects, were relevant to how Nicholas was injured. No basis appears for the Doweys' assertion that the flashlight was not timely turned over because the batteries were missing. Regardless, they point to no prejudice.

8. The Doweys submit that the defense improperly vouched for the individual deputies and opined about the credibility of two eye witnesses in closing argument. However, as they neither objected nor asked for a mistrial, our review is for plain error. At most, counsel's comments put their own, but not the government's, approval behind the deputies; whether or not entirely appropriate, the comments were not egregious and did not call into question the fundamental fairness of the proceedings. *Bird v. Glacier Electric Coop., Inc.,* 255 F.3d 1136 (9th Cir.2001).

9. Although the lack of a limiting instruction as to vouching is identified as an issue, it is not argued and is deemed abandoned.

10. The district court did not abuse its discretion in precluding the Doweys' experts from expressing an opinion that the deputies' actions were excessive unless necessary to rebut testimony by a defense expert. Having considered the proffer, the court could well conclude that admission of the opinion would merely tell the jury what result to reach. *See* Fed. R.Evid. 704 Advisory Committee's Note (1972).

11. On balance, we cannot say that the court abused its discretion by excluding evidence of Rodarte's termination for lying on the ground that it was too prejudicial and not sufficiently probative. In any event, the Doweys were allowed to impeach Rodarte by prior inconsistent statements (if any) made to the Department. *See Maddox v. City of Los Angeles,* 792 F.2d 1408, 1418 (9th Cir. 1986).

12. Even though the liability phase was bifurcated from damages, evidence of Nicholas's beating prior to the deputies' arrival was nevertheless relevant and its admission was within the court's discretion. Such evidence was necessary for setting the stage for the deputies' actions, for explaining why Nicholas was covered with blood, why he was out-of-control and unresponsive to offers of help without being drunk or high, and for deciding what force was actually used by the officers and whether in the circumstances it was excessive. The Doweys suggest that the court should have made it clear to the jury that this was not the issue, but they point to no

error in the instructions that were given or to any that were improperly refused.

13. Whether or not Gongora was properly allowed to testify as an expert, his testimony was harmless in light of all the evidence adduced at trial.

14. The district court was within its discretion to exclude lay testimony by eyewitnesses about whether they thought the force that was used was excessive. Their opinions would not have helped the jury decide what happened.

AFFIRMED.